**TEXAS INSTRUMENTS INC., Plaintiff,**

v.

**TESSERA, INC., Defendant.**

Tessera, Inc., Counterclaimant,

v.

Texas Instruments, Inc.,
Counterdefendant.

No. SACV00–114DOC(ANX).

United States District Court,
C.D. California.

May 2, 2000.

Richard J. Grabowski, Thomas R. Malcolm, Jones Day Reavis & Pogue, Irvine, CA, W. Kelly Stewart, Mark N. Reiter, Jones Day Reavis & Pogue, Dallas, TX, for Plaintiff and Counterdefendant.

Darrell L. Olson, Stephen M. Lobbin, Knobbe Martens Olson & Bear, Newport Beach, CA, Michael A. Ladra, James C. Otteson, Sara L. Eisner, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Defendant and Counterclaimant.

## ORDER

### DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND GRANTING THE UNITED STATES INTERNATIONAL TRADE COMMISSION'S MOTION FOR LEAVE TO INTERVENE

CARTER, District Judge.

This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction.

At issue is whether Plaintiff and Counter-defendant Texas Instruments, Inc. (hereinafter "TI") has made a sufficient showing to justify granting the preliminary remedies being sought here. The Court must decide whether Plaintiff is likely to prevail on its forum selection clause argument and whether there is a significant threat of irreparable injury to Plaintiff if Defendant Tessera, Inc. (hereinafter "Tessera") maintains an action before the International Trade Commission (hereinafter "ITC")[1]. After careful consideration of the moving and responding papers, the Court DENIES Plaintiff's Motion for Preliminary Injunction.

## I. Facts

On November 1, 1996, TI and Tessera entered into a Limited TCC ™ License Agreement, which gave TI the right to make, use and sell semiconductor chips with Tessera's chip scale packaging technology (hereinafter "CSP")[2]. Because the CSP is protected by Tessera's patents, the License Agreement required TI to pay royalties to Tessera for TI products that infringed Tessera's patents. From November 1996 to the present, TI has paid no royalties to Tessera under the License Agreement. TI maintains that its products do not infringe Tessera's patents, that it therefore owes no royalties, and that the License is still in effect. Tessera, however, contends that certain TI products, with the MicroStar BGA packaging, infringe Tessera patents, that TI should have paid royalties on those products and because TI has not paid any royalties, the License Agreement has been terminated.

On January 17, 2000, Tessera provided TI with 60 days notice that Tessera was terminating the License Agreement for TI's alleged breach. On February 1, 2000, TI filed this action, seeking a declaration regarding the scope of the License and that the patents

1. The ITC is an independent agency of the federal government; the ITC is not an Article III court of the United States.

2. CSP is a semiconductor package in which the connections between the chip and the circuit board are contained within the area which is below the chip itself so that the chip occupies less space on the circuit board. CSP technology is useful when small size and high performance are necessary, as with cellular telephones.

are invalid and not infringed. Tessera has counterclaimed for patent infringement, seeking damages and injunctive relief. On March 28, 2000, Tessera also filed a Complaint with the ITC in Washington, D.C. that names TI, Sharp Corporation and Sharp Electronics Corporation as respondents. The ITC Complaint involves the same patents at issue in Tessera's counterclaim for patent infringement before this Court. The ITC Complaint essentially alleges that the three companies violated Section 337 of the Tariff Act of 1930 by unlawfully importing into and/or selling within the United States certain semiconductor chips with minimized chip package size.

On April 5, 2000, TI filed an Application for a Temporary Restraining Order (hereinafter "TRO") and Order to Show Cause re Preliminary Injunction. On April 7, 2000, the Court denied Plaintiff's Application for a TRO and set the Preliminary Injunction for hearing on May 1, 2000. On April 27, 2000, The ITC determined Tessera's request for review of certain claims will be allowed. For this reason, on April 27, 2000, the ITC filed an Ex Parte Application for an Order Shortening Time for its Motion to Intervene and filed a Motion to Intervene.

TI filed its TRO to enjoin Tessera from pursuing its action before the ITC, which, TI argues, violates the forum selection clause of their License Agreement. Section XVI of the License Agreement contains a forum selection clause under Section A, Governing Law, as follows:

> This Agreement shall be governed, interpreted and construed in accordance with the laws of the State of California as if without regard to its provisions with respect to conflicts of Laws. Both parties shall use their best efforts to resolve by mutual agreement any disputes, controversies, claims or differences which may arise from, under, out of or in connection with this Agreement. If such disputes, controversies, claims of differences cannot be settled between the parties, any litigation between the parties relating to this Agreement shall take place in California. The parties hereby consent to personal juris-

diction and venue in the state and federal courts of California.

License Agreement at 15, XVI. At issue before the Court is this forum selection clause.

## II. Analysis

■ Before a Court may grant a preliminary injunction, the Plaintiff has the burden of proving: (1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) whether the risk of irreparable injury to Plaintiff if the relief is denied outweighs the foreseeable hardship to Defendant if it is granted; *and* (4) whether any public interest favors granting the injunction. *See American Motorcyclist Association v. Watt,* 714 F.2d 962, 965 (9th Cir.1983). "Where the balance of harm tips decidedly toward the plaintiff, he need not show a substantial likelihood of success on the merits." *Hawaii Psychiatric Society, District Branch of the American Psychiatric Ass'n v. Ariyoshi,* 481 F.Supp. 1028, 1036 (D.Haw. 1979); *see also Dogloo, Inc. v. Doskocil Manufacturing Co., Inc.,* 893 F.Supp. 911, 916 (1995) (quoting *International Jensen v. Metrosound U.S.A.,* 4 F.3d 819 (9th Cir.1993)). On the other hand, Courts are disinclined to grant preliminary injunctions when the plaintiff has a low likelihood of success on the merits. *See, e.g., Thayer Plymouth Center, Inc. v. Chrysler Motors Corp.,* 255 Cal. App.2d 300, 304, 63 Cal.Rptr. 148 (1967) ("A preliminary injunction will not issue where it is doubtful that the party seeking the preliminary injunction will ultimately prevail in the lawsuit.").

### A. No Likelihood of Success on the Merits

■ Parties may by contract designate a forum in which any litigation is to take place. *See TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.,* 915 F.2d 1351, 1353 (9th Cir.1990); *see also Voicelink Data Services, Inc. v. Datapulse, Inc.,* 937 P.2d 1158, 1160, 86 Wash.App. 613, 617 (finding that, especially in the commercial context, "the enforcement of forum selection clauses serves the salutary purpose of enhancing contractual predictability."). Parties incorporate forum selection clauses to "obviate the danger that a dispute under the

agreement might be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved." *TAAG*, 915 F.2d at 1355. Federal law governs the validity of forum selection clauses. *See Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996). Forum selection clauses are presumptively valid and courts often enforce forum selection clauses if the nonmoving party fails to establish the· clause is unfair or unreasonable. *See Voicelink,* 937 P.2d at 1160; *see also Argueta,* 87 F.3d at 324 (finding that a forum selection clause is unreasonable if it is the result of fraud or undue influence, the forum will deprive one party of its day in court, or enforcement of the clause would violate public policy).

■ The Court finds that Plaintiff will probably succeed in proving that the forum selection clause of the 1996 License Agreement is valid and enforceable, as there is no evidence that Section XVI of the Agreement was the result of fraud or undue influence, violates public policy or is fundamentally unfair. Furthermore, because whether or not TI breached the agreement and whether or not it should have been paying royalties is at issue in this action, the Court finds that the License, and more specifically the forum selection clause, is enforceable until the breach issue is resolved.

The Court, however, finds that the forum selection clauses is limited to "litigation" and that Plaintiff has not established a likelihood of proving that Defendant's action before the ITC is litigation and therefore covered under the forum selection clause. First, while the forum selection clause encourages the parties "to use their best efforts to resolve by mutual agreement any disputes, controversies, claims or differences," if such disputes or controversies cannot be *"settled," "any litigation ... shall take place in California."* (emphasis added). Thus, the forum selection clause does not mandate that all dispute resolution, for example, take place in California only. Rather, the forum selection clause mandates that any *litigation* take place in California.

Second, litigation means "any civil action or proceeding, commenced, maintained or pending in any state or federal *court."* Cal. C.C.P. § 391(a) (emphasis added). TI argues that the California Government Code Section 11126(e)(2)(C)(iii) defines litigation as including an adjudicatory proceeding before an administrative body. However, the issue before the Court is one of civil procedure and not of state government bodies. Therefore, the Court finds that the term "litigation" contemplates only matters before a court and the forum selection clause does not limit the parties' federal right to administrative redress. If the parties intended the forum selection clause to include actions before administrative bodies, such as the ITC, it could have said so.

Finally, the ITC is not an Article III court. The ITC is an independent government agency. Unlike a district court, the ITC has no authority to award damages for patent infringement. Rather, the ITC, through the United States Customs Service, has the authority to prevent the importation of infringing goods. *See* 19 U.S.C. § 1337. In fact, if this Court were to issue an injunction, the Court would be interfering with the ITC's statutory mandate to investigate complaints brought under 19 U.S.C. § 1337 and would adversely impact the ITC's ability to perform its statutory duties. Moreover, any issue of infringement determined by the ITC does not bind this Court or the parties and therefore emphasizes how an administrative action before the ITC is not litigation. The ITC, with in rem jurisdiction alone, can proceed without parties, at its own initiative, and has no res judicata or collateral estoppel effect. Likewise, remedies available through the ITC are not available through a district court.

Thus, because the forum selection clause is only enforceable as to litigation, and not administrative actions before the ITC, Plaintiff has not established a likelihood of succeeding on the merits. The Court does not have the jurisdiction to enjoin the ITC action, as it is not litigation. Moreover, because the test for a preliminary injunction is in the conjunctive, the Court does not proceed with the other elements.

### B. The International Trade Commission Has the Right to Intervene

 The ITC has moved to intervene in this action under Federal Rule of Civil Procedure 24 for the limited purpose of opposing TI's Motion for a Preliminary Injunction. Under Rule 24(a)(2), an applicant may intervene as of right when "the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

As set forth in *Smith v. Marsh,* 194 F.3d 1045 (9th Cir.1999), the ITC meets all four prongs of the Rule 24(a)(2) test. First, ITC's request to intervene is timely. Second, the ITC has an interest in the subject of the action, and disposition of the action will impede the ITC from protecting its interest, as an injunction would interfere with the Commission's statutory mandate to investigate complaints brought under 19 U.S.C. § 1337. Third, no other existing party to this action can adequately represent ITC's interests. Likewise, neither of the parties to the action before this Court will be prejudiced by the ITC's intervention for the limited purpose of opposing TI's Motion for Preliminary Injunction.

In addition, even if the Court found that the ITC could not intervene as a matter of right, the Court would still grant the ITC permission to intervene under Federal Rule of Civil Procedure 24(b). The ITC's argument and the main action have a question of law in common. The Commission therefore should be permitted to investigate Tessera's Complaint and intervene in this action for the limited purpose of opposing TI's Motion for Preliminary Injunction. For the foregoing reasons, the Court hereby GRANTS the ITC's Motion to Intervene.

### III. Disposition

For the foregoing reasons, and because there has been no convincing demonstration that the statutorily authorized ITC investigation should be obstructed by enjoining the ITC Complaint, the Court hereby DENIES Plaintiff's Motion for Preliminary Injunction and GRANTS the ITC's Motion to Intervene. *Cf. Alexander v. Gardner–Denver Company,* 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974) (finding that statutory rights under Title VII can be exercised independent of, and despite, a contractual arbitration agreement).

IT IS SO ORDERED.