Opinion for the court filed by Circuit Judge RADER. Dissenting opinion filed by Circuit Judge LOURIE.
RADER, Circuit Judge.
In the United States District Court for the Central District of California, Texas Instruments Incorporated (TI) sought to enjoin Tessera, Inc. (Tessera) from continued participation in an International Trade Commission (ITC) infringement action that Tessera had initiated. The district court denied TI’s motion. Because the license agreement between TI and Tessera requires any litigation, including ITC proceedings under Section 337 of the Tariff Act of 1930, to occur in the State of California, this court vacates and remands to the district court to re-entertain TI’s preliminary injunction motion.[1]
*1327 I.
On November 1, 1996, TI entered into a “Limited TCC License Agreement” with Tessera. The license agreement covers technology claimed in several of Tessera’s United States patents. The technology relates to chip scale packaging, a semiconductor package with connections between the semiconductor chip and a circuit board underneath the chip, within the periphery of the chip itself. Tessera designates this type of chip package with the brand name “TCC,” for Tessera Compliant Chip. TCCs occupy less space on a circuit board than conventionally packaged chips, a feature which is particularly attractive in applications such as cellular phones.
The license agreement between Tessera and TI contains a clause that governs the law and venue that applies to the agreement:
Governing Lato. This Agreement shall be governed, interpreted and construed in accordance with the laws of the States [sic] of California as if without regard to its provisions with respect to conflicts of Laws. Both parities [sic] shall use their best efforts to resolve by mutual agreement any disputes, controversies, claims or difference which may arise from, under, out of or in connection with this Agreement. If such disputes, controversies, claims or differences cannot be settled between the parties, any litigation between the parties relating to this Agreement shall take place in California. The parties hereby consent to personal jurisdiction and venue in the state and federal courts of California.
(Emphasis added.)
In April 1999, Tessera requested royalties for a class of TI imports known as “MicroStar BGA.” Tessera sought royalties under its United States Patents Nos. 5,679,977, “Semiconductor Chip Assemblies, Methods of Making Same and Components for Same” (’997 patent); 5,852,326, “Face-Up Semiconductor Chip Assembly” (’997 patent); and 5,347,159, “Semiconductor Chip Assemblies with Face-Up Mounting and Rear-Surface Connection to Substrate.” After negotiations, TI and Tessera could not agree on whether the license agreement covered the accused TI products. Therefore, on January 17, 2000, Tessera notified TI of its termination of the license agreement. In response to Tessera’s notice of termination, TI filed an action for declaratory judgment of invalidity and non-infringement in the United States District Court for the Central District of California on February 1, 2000.
On March 28, 2000, Tessera filed a complaint with the ITC, under Section 337 of the Tariff Act of 1930, charging that TI’s importation of the MicroStar BGA products and certain importations by others infringe the ’997 and ’326 patents. See 19 U.S.C. § 1337 (1994).
On April 4, 2000, TI applied for a Temporary Restraining Order (TRO) and an order requesting an expedited preliminary injunction hearing in the California district court. TI requested the court to restrain Tessera “from pursuing any disputes, controversies, claims or differences ... against TI that arise from, under, out of or in connection with” the license agreement, in any place outside California. TI asserted that because the ITC tribunal is located in Washington, D.C., Tessera’s ITC complaint violated the license agreement. TI further explained that the ITC determines whether to initiate an investigation within thirty days of the filing of a complaint. TI considered its request for an expedited preliminary injunction hearing warranted because Tessera could not simply withdraw its. complaint once the ITC initiated an investigation. The district court denied TI’s application for a TRO and set the preliminary injunction hearing date for May 1, 2000.
*1328 On April 27, 2000, the ITC instituted an investigation into the allegedly infringing imports. See In the Matter of Certain Semiconductor Chips with Minimized Chip Package Size and Products Containing Same, Investigation No. 337-TA-432 (April 27, 2000). The ITC’s Notice of Investigation named TI, Sharp Corporation, and Sharp Electronics Corporation as respondents. Id. That same day, the ITC made a motion, under Fed. R. Civ. P. 24, for leave to intervene in the preliminary injunction hearing at the district court “for the purpose of opposing [TI’s] motion to enjoin [Tessera] from pursuing claims ... through the ITC.”
On May 2, 2000, the district court granted ITC’s motion to intervene and denied TI’s motion for a preliminary injunction. See Texas Instruments Inc. v. Tessera, Inc., 192 F.R.D. 637 (C.D.Cal.2000) (TI I). The district court found that TI was not likely to succeed on the merits of its claim that the governing law clause covered ITC proceedings. The district court concluded that the agreement’s governing law clause “is limited to ‘litigation’ and that [TI] has not established a likelihood of proving that [Tessera’s] action before the ITC is litigation.” TI I, at 640. In reaching this conclusion, the district court relied on the definition of “litigation” in the Cal.Code op Civ. Proo., section 391(a) (1994), “Vexatious Litigants.” In that section, “‘litigation’ means ‘any civil action or proceeding, commenced,' maintained or pending in any state or federal court.”’ TI I, at 640 (quoting Cal.Code Crv. Proc. § 391(a)). Based on this definition,, the trial court found that the term “litigation” in the agreement “doesn’t limit the parties’ federal right to administrative redress.” Id. The district court further found that enjoining Tessera’s participation would be an impermissible interference with the ITC’s statutorily authorized proceedings. TI appeals, invoking this court’s jurisdiction of interlocutory appeals under 28 U.S.C. § 1292(c)(1) (1994).
II.
This court generally views the grant or denial of a preliminary injunction as a procedural issue not unique to the exclusive jurisdiction of the Federal Circuit. See Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 894, 49 USPQ2d 1308, 1310 (Fed.Cir.1998); see also Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc., 908 F.2d 951, 952, 15 USPQ2d 1469, 1470 (Fed.Cir.1990). When reviewing “procedural matters not unique to the areas that are exclusively assigned to the Federal Circuit,” this court generally applies the procedural law of the regional circuit in which the case originated. Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1188 n. 2, 37 USPQ2d 1685, 1686 n. 2 (Fed.Cir.1996). This court, however, applies its own body of precedent to uniformly deal with procedural matters arising from substantive issues in areas of law within the unique jurisdiction of this circuit. See Mikohn Gaming, 165 F.3d at 894, 49 USPQ2d at 1310; see also Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1360, 50 USPQ2d 1672, 1675-76 (Fed.Cir.) cert. denied, 528 U.S. 1019, 120 S.Ct. 527, 145 L.Ed.2d 409 (1999).
TI’s preliminary injunction motion was a request for the district court to enjoin Tessera from continued participation in an ITC proceeding. This court has .exclusive appellate jurisdiction over ITC determinations made under section 337 of the Tariff Act of 1930. See 28 U.S.C. § 1295(a)(6) (1994). Thus, TI’s appeal relates to a procedural matter arising from substantive issues in an area of law within the unique jurisdiction of this circuit. This circuit’s procedural law, therefore, applies to the district court’s order under review. Under Federal Circuit law, this court sustains a grant or denial of a preliminary injunction unless the district court abused its discretion, or based its decision on an erroneous legal standard or clearly erroneous findings of fact. See Mentor Graphics Corp. v. Quickturn Design Sys., Inc., 150 F.3d 1374, 1377, 47 *1329 USPQ2d 1683, 1685 (Fed.Cir.1998); see also Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1449, 7 USPQ2d 1191, 1194 (Fed.Cir.1988).
The district court’s order denying TI’s motion for a preliminary injunction also presents an issue concerning interpretation of a license agreement. General contract interpretation is not within the exclusive jurisdiction of the Federal Circuit. The Supreme Court has held that “[t]he interpretation of private contracts is ordinarily a question of state law.” Volt Info. Sci, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 474, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Furthermore, the governing law clause of the license agreement requires interpretation of the agreement “in accordance with the laws of the States [sic] of California.” This court will, therefore, apply California state law to interpret the license agreement. Under California state law, contracts are interpreted without deference on appeal. Plaza Freeway Ltd. P’ship v. First Mountain Bank, 81 Cal.App.4th 616, 620, 96 Cal.Rptr.2d 865 (2000).
According to this circuit’s law, a party seeking an injunction must show: (1) a reasonable likelihood of success on the merits; (2) irreparable harm; (3) a balance of hardships in its favor; and (4) a public interest in favor of the injunction. See Chrysler Motors Corp., 908 F.2d at 952, 15 USPQ2d at 1470. The United States Court of Appeals for the Ninth Circuit applies the same test. See Am. Motorcyclist Ass’n v. Watt, 714 F.2d 962, 965 (9th Cir.1983). This court prefers that a district court make findings regarding each of the four factors before granting or denying a preliminary injunction motion. See Nutrition 21 v. United States, 930 F.2d 867, 869, 18 USPQ2d 1347, 1349 (Fed.Ch.1991) (“Sufficient factual findings on the material issues are necessary to allow this court to have a basis for meaningful review.”). However, because “a movant must establish both a likelihood of success on the merits and irreparable harm ... the district court may deny a preliminary injunction based on the movant’s failure to establish either of these two crucial factors without making additional findings respecting the other factors.” Reebok Int’l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1556, 31 USPQ2d 1781, 1784 (Fed.Cir.1994).
The Cal. Civ.Code supplies basic rules for contract interpretation: (1) “clear and explicit” language which does not produce an absurdity will govern, Cal. Civ. Code § 1638; (2) ambiguous terms receive the meaning “which the promisor believed, at the time of making it, that the promisee understood,” Cal. Civ.Code § 1649; and (3) ambiguity persisting beyond the application of the previous rule will be resolved against “the party who caused the uncertainty to exist,” Cal. Civ.Code § 1654. In sum, “the mutual intention of the parties at the time the contract is formed governs interpretation.” AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253, 1264 (1990).
When interpreting a contract provision, a court gives the contract terms their ordinary and popular meaning unless the contracting parties use them in a technical or a special sense. Id. at 822, 274 Cal.Rptr. 820, 799 P.2d 1253.
As noted above, contracts in California rely for meaning predominantly upon the mutual intention of the parties at the time of contracting. The district court did not make any findings as to the parties’ understanding of the term “litigation” at the time of contracting. The license agreement at issue in this suit governs a very specific form of business arrangement, namely the licensing of patented technology. Both Tessera and TI are sophisticated corporations with experience in patent licensing. The United States Patent and Trademark Office Patent Bibliographic Database lists Tessera as the assignee of over 110 patents, TI of over 8000 patents. These corporations necessarily regularly apply the basic tenets of patent practice. Each is well aware of available *1330 remedies for patentees and defenses for accused infringers. Thus, these contracting parties would have negotiated the clauses of the patent license agreement with knowledge of patent law, including available remedies for patent law violations.
Patent law affords a patentee several alternative remedies against a purported infringer. For alleged domestic infringement, a patentee can file an action in a district court. See 35 U.S.C. § 281 (1952); see also 28 U.S.C. § 1338 (1994). For alleged infringement through importation, a patentee can also file an action in a district court or in the ITC. See 19 U.S.C. § 1337. In fact, a patentee can bring suit both in a district court and in the ITC against an alleged infringer who is importing an allegedly infringing product.
The two forums offer a patentee different types of remedies. In a district court, a patentee can seek an injunction and damages. With respect to infringing imports, however, the patentee must take the additional step of requesting the U.S. Customs Service to enforce the district court judgment by seizing the offending goods. In the ITC, the patentee may not seek money damages, Bio-Tech. Gen. Corp. v. Genentech, Inc., 80 F.3d 1553, 1564, 38 USPQ2d 1321, 1329 (Fed.Cir.1996), but the ITC automatically enforces its judgment by directing the U.S. Customs Service to seize any infringing imports.
Thus, when TI and Tessera negotiated the terms of their licensing ’ agreement, this court attributes to them adequate knowledge of the basic patent law actions and remedies available to litigants, including the available forums and venues. Both parties would have been fully aware of the forums of the district courts and the ITC for resolution of future controversies arising from the license agreement. With this in mind, this court next examines the parties’ intentions in using the word “litigation” in the governing law clause of their agreement. As mentioned earlier, the district court determined the meaning of “litigation” based on the California Code of Civil Procedure Title for “Vexatious Litigants.” The definition of “litigation” in that title does not govern this licensing agreement for Tessera patents. In the first place, the Cal.Code Civ. PROC., section 391, states: “As used in this title ... ‘Litigation’ means .... ” (emphasis added). Thus, the California Code limits its definition to use in that particular title. This limitation hardly suggests that TI and Tessera would have incorporated that meaning from the California “Vexatious Litigants” section into their license agreement on patented technology.
In the field of patent law, which is more relevant to the meaning of this license, “litigation” does not exclude ITC proceedings under section 337. Section 337 proceedings are inter partes actions initiated by the filing of a complaint and including discovery, filing of briefs and motions, and testimony and arguments at a hearing before an administrative law judge. See 19 U.S.C. § 1337(c). In section 337 proceedings relevant to patent infringement, the ITC follows Title 35 of the United States Code and the case law of this court. See 19 U.S.C. § 1337(c). In sum, this court has consistently treated section 337 patent infringement proceedings as litigation. See, e.g., San Huan New Materials High Tech, Inc. v. Int’l Trade Comm’n, 161 F.3d 1347, 1358, 48 USPQ2d 1865, 1874 (Fed.Cir.1998) (‘We agree with the Commission that San Huan was given a full and fair opportunity to litigate in the original investigation such issues as measurement error and prior art limitations on the doctrine of equivalents.”); Bio-Tech., 80 F.3d at 1563 (stating that the ITC acts “in a judicial capacity” when it handles section 337 investigations); Texas Instruments Inc. v. United States Int’l Trade Comm’n, 871 F.2d 1054, 1067, 10 USPQ2d 1257, 1267 (Fed.Cir.1989) (“The Commission’s exclusion order is directed only to the Samsung DRAMs involved in this litigation and that order is sustainable on the basis of the 701 patent.”); Allied Corp. v. United States Int’l Trade Comm’n, 850 F.2d 1573, 1580, 7 USPQ2d 1303, 1308 (Fed.Cir.1988) (stat *1331 ing in an ITC proceeding that, “Allied’s effort to now litigate its claim construction issues is improper.”); The Young Eng’rs, Inc. v. United States Int’l Trade Comm’n, 721 F.2d 1305, 1315, 219 USPQ 1142, 1151 (Fed.Cir.1983) (“The alleged infringer is as burdened by the litigation before the Commission as before a court.”).
Indeed, the ITC itself refers to its section 337 proceedings as “litigation.” See, e.g., ITC R. Prac. & P„ 19 C.F.R. § 210.27 (1999) (referring to the “cost of litigation” and “issues at stake in the litigation” with respect to ITC discovery rules); see also U.S. International Trade Commission Fiscal Year 1996 Annual Report, 1997 ITC Lexis 410 (August 1997) (“The ITC’s Administrative Law Judges (ALJs) direct litigation, hold hearings, and make initial determinations in investigations under section 337 of the Tariff Act of 1930.”). Moreover, practitioners, commentators, and scholars in the areas of both intellectual property and trade law also refer to section 337 investigations as litigation. See 138 A.L.R. Fed. 393, 482, 1997 WL 475158 (1997) (describing “costs incurred in connection with defending litigation brought by the defendant before the ITC.”); see also Douglas P. Martin, Preclusive Effect of Factual Determinations of the International Trade Commission with Regard to Patent Matters, 62 U. Chi. L.Rev. 885, 907-908 (1995) (“Litigation in the ITC is similar to that in the district courts in most respects.... ITC proceedings may provide substantially less time to litigate than do district court proceedings.”); Margo A. Bagley, Using Section SS7 of the Tariff Act of 1980 to Block Materially Different Gray Market Goods in the Common Control Context: Are Reports of its Death Greatly Exaggerated?, 44 Emory L.J. 1541, 1584 (1995) (noting that “[a]nother benefit of section 337 is that it allows for litigation to proceed simultaneously in district court and before the ITC”).
Therefore, section 337 proceedings at the ITC are recognized as litigation. As noted earlier, this court attributes knowledge of patent law and its language and usages to both parties at the time of contracting. In interpreting contracts, words are given their “clear and explicit” meaning in the field of the agreement unless it is clearly shown that the parties intended a different meaning. See Cal. Civ.Code § 1638; see also Cal. Civ.Code § 1649. Thus, the term “litigation” in the governing law clause of the license agreement includes section 337 proceedings at the ITC. The governing law clause, therefore, requires any litigation between the parties, including ITC proceedings, to take place in California. Because ITC actions cannot be brought in California, it follows that the parties did not agree to the ITC as a forum for litigation.
This court further notes that the governing law clause of the license agreement is not limited to license related issues such as the amount of royalty due, term of agreement, and cross-licensing. The governing law clause lists “disputes, controversies, claims or differencefs] which may arise from, tinder, out of or in connection with this Agreement.” (Emphasis added.) Patent infringement disputes do arise from license agreements. See, e.g., United States Valves, Inc. v. Dray, 212 F.3d 1368, 54 USPQ2d 1834 (Fed.Cir.2000); Dow Chem. Co. v. United States, 226 F.3d 1334, 56 USPQ2d 1014 (Fed.Cir.2000). There may be an issue, as here, of whether certain goods are covered by the licensed patents; or the licensee may elect to challenge the validity of the licensed patents. See, e.g., Engel Indus., Inc. v. Lockformer Co., 166 F.3d 1379, 49 USPQ2d 1618 (Fed.Cir.1999); Studiengesellschaft Kohle M.B.H. v. Shell Oil Co., 112 F.3d 1561, 42 USPQ2d 1674 (Fed.Cir.1997). Thus, the governing law clause in the present case, as in any patent license agreement, necessarily covers disputes concerning patent issues.
The district court denied TI’s preliminary injunction motion based on a finding that TI was not likely to succeed on its claim that the governing law clause includes ITC proceedings. Because this *1332 court has determined that the governing law clause does encompass ITC proceedings under section 337, this court reverses the district court’s finding on this preliminary injunction factor.
Following a combination of Ninth Circuit and California state law, the district court only examined TI’s likelihood of success on the merits in denying the motion for preliminary judgment. TI I, 192 F.R.D. at 640 (“Moreover, because the test for a preliminary injunction is in the conjunctive, the Court does not proceed with the other elements.”). Because the district court did not make any relevant findings on the other preliminary injunction factors, this court does not have any record on which to review the irreparable harm and public policy factors. This court, therefore, vacates the district court’s denial of TI’s preliminary injunction motion and remands to the district court to make findings on the other factors and re-entertain TI’s motion.
III.
The district court also declined to grant TI’s motion for a preliminary injunction because it found that to do so would interfere “with the [ITCj’s statutory mandate to investigate complaints brought under 19 U.S.C. § 1337 and would adversely impact the ITC’s ability to perform its statutory duties.” TI I, 192 F.R.D. at 641. The district court also held that it “does not have the jurisdiction to enjoin the ITC action, as it is not litigation.” Id. In its' judgment, the district court concluded that TI did not present a “convincing demonstration that the statutorily authorized ITC investigation should be obstructed by enjoining the ITC Complaint.” Id.
In light of its interpretation of the term “litigation” in the license agreement, this court also observes that the district court erred in assessing the implications of enforcing the license agreement. Because the governing law clause encompasses ITC section 337 proceedings, Tessera breached this provision of the license agreement by bringing an action against TI at the ITC (which is in Washington, D.C.), rather than in a court in California, as mandated by the agreement. Thus, TI may have been prejudiced by Tessera’s breach, for TI had already filed suit in California and would now be obliged to defend a second action in a Washington, D.C., forum. In effect, Tessera is attempting to compel TI to fight infringement battles on two fronts.
More important, TI’s preliminary injunction motion will not and cannot enjoin the ITC action. TI has not sought to enjoin the ITC directly, but only to enjoin Tess-era from participating in the ITC proceedings against TI. The ITC, intervening in this appeal, advised that the action will continue, even without Tessera’s participation with respect to TI. The ITC’s investigation of Tessera’s complaint includes Sharp Corporation and Sharp Electronics Corporation as respondents in addition to TI. Tessera, therefore, will still participate in the overall ITC proceeding, even if TI’s preliminary injunction request is ultimately granted. Any potential injunction would simply implement the governing law clause and any litigation between Tessera and TI will occur in a California district court.
CONCLUSION
This court reverses the district court’s judgment that TI would not be likely to succeed in proving that Tessera’s action before the ITC is covered by the governing law clause. This court, therefore, vacates the district court’s denial of TI’s preliminary injunction motion and remands to the district court to reconsider the preliminary injunction motion on the remaining preliminary injunction factors.
COSTS
Each party shall bear its own costs.
VACATED and REMANDED

. On June 2, 2000, the Central District of California granted Tessera's "Motion to Transfer Venue” to the Northern District of California under 28 U.S.C. § 1404(a) (1994). *1327 The Northern District of California, therefore, will hear TI's preliminary injunction on remand.