# United States Court of Appeals for the Federal Circuit

---

**GENERAL PROTECHT GROUP, INC.**
**(formerly known as Zhejiang Dongzheng Electrical Co.),**
**G-TECHT GLOBAL CORPORATION,**
**SECURELECTRIC CORPORATION,** AND
**WAREHOUSE-LIGHTING.COM, LLC,**
*Plaintiffs-Appellees,*

AND

**CENTRAL PURCHASING, LLC** AND
**HARBOR FREIGHT TOOLS USA, INC.,**
*Plaintiffs-Appellees,*

v.

**LEVITON MANUFACTURING CO., INC.,**
*Defendant-Appellant.*

---

2011-1115

---

Appeal from United States District Court for the District of New Mexico in case no. 10-CV-1020, Judge James O. Browning.

---

Decided: July 8, 2011

---

WILLIAM F. LONG, Sutherland, Asbill & Brennan, LLP, of Atlanta, Georgia, argued for plaintiffs-appellees General Protecht Group, Inc., et al. With him on the brief were ANN G. FORT, LEI FANG and JOSHUA D. CURRY.

MARK J. ROSENBERG, Sills Cummis & Cross P.C., of New York, New York, for plaintiffs-appellees Central Purchasing, LLC, et al.

LARRY L. SHATZER, Wilson, Sonsini, Goodrich & Rosati, P.C., of Washington, DC, argued for defendant-appellant. With him on the brief were SHAUN R. SNADER; and STEFANI E. SHANBERG and ROBIN L. BREWER, of Palo Alto, California.

---

Before LINN, SCHALL, and DYK, *Circuit Judges*

LINN, *Circuit Judge*.

Leviton Manufacturing Co., Inc. ("Leviton") appeals the grant of a preliminary injunction to enforce a forum selection clause in a settlement agreement which resolved a prior lawsuit brought by Leviton against General Protecht Group, Inc., formerly known as Zhejiang Dongzheng Electrical Co. ("GPG"). Because the district court correctly determined that the forum selection clause applies to this case and did not abuse its discretion in granting the preliminary injunction, this court affirms.

## I. BACKGROUND

Leviton and GPG are both manufacturers of ground fault circuit interrupters ("GFCIs"). In 2004 and 2005, Leviton sued GPG and three other defendants, including two of the Appellees, in the District of New Mexico for infringement of U.S. Patent Nos. 6,246,558 and 6,864,766 ("'558 patent" and "'766 patent" respectively). In 2007,

the parties settled that lawsuit pursuant to the terms of a confidential settlement agreement ("Settlement Agreement"). The Settlement Agreement included the following covenant not to sue:

> 2.1    . . . Leviton also hereby covenants not to sue (1) Defendants . . . for alleged infringement of the '558 and/or '766 patents based on the Dongzheng products currently accused of infringement . . . and (2) Defendants . . . for alleged infringement of the '558 patent and/or the '766 patent with respect to an anticipated future new GFCI product that Defendant Dongzheng has indicated its intent to market in the U.S. in the future, provided however that [the future product conforms to a submitted design].

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, No. 10-cv-1020, 2010 WL 5559750, at *2 (D.N.M. 2010); Appellees' Br. at 7. The Settlement Agreement also specified that the covenant not to sue applied to customers of the defendants, and that "Leviton . . . agrees that Defendants' customers are intended beneficiaries . . . and . . . can enforce such provisions against Leviton . . . ." Appellees' Br. at 8.

In addition, the Settlement Agreement included the following clause entitled "Governing Law/Venue":

> Any dispute between the Parties relating to or arising out of this [Settlement Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico. The Parties consent to the venue and jurisdiction of such court for this purpose.

*Gen. Protecht*, 2010 WL 5559750, at *3.

In September 2010, Leviton filed a complaint with the International Trade Commission ("ITC") alleging infringement by GPG and its U.S. distributors (the other Appellees here) of U.S. Patents Nos. 7,463,124 and 7,764,151 ("'124 patent" and "'151 patent" respectively). Around the same time, Leviton filed a complaint against Appellees and other defendants in the Northern District of California alleging infringement of the same two patents. The '124 and '151 patents are both continuations ultimately depending from the applications that issued as the '558 and '766 patents. Both the '124 and '151 patents issued after the Settlement Agreement was executed and the prior litigation resolved.

Following receipt of these complaints, GPG informed Leviton that it believed it had a license to practice the asserted patents under the Settlement Agreement, and that Leviton was required to bring its case in the District of New Mexico pursuant to the forum selection clause in the same agreement. The parties were unable to agree, and Appellees filed a complaint in the District of New Mexico asserting declaratory-judgment claims for breach of contract, non-infringement, and invalidity. GPG also moved in New Mexico for a temporary restraining order and a preliminary injunction against Leviton's continued litigation of the dispute outside of New Mexico.

The New Mexico district court granted the preliminary injunction enforcing the forum selection clause of the Settlement Agreement. The district court found that there was a likelihood of success on the merits because GPG had asserted a defense of implied license, which likely triggered the forum selection clause, and because GPG was likely to succeed on the merits of this defense. *Gen. Protecht*, 2010 WL 5559750, at *1. The district court also considered the other three preliminary injunction

factors (irreparable harm, balance of hardships, public interest) and found that each favored entry of a preliminary injunction. *Id.* at 25-28.

Leviton appealed and sought expedited review, which this court granted, and a stay pending appeal of the preliminary injunction, which this court denied. In December 2010, pursuant to the preliminary injunction, Leviton voluntarily dismissed its California action and moved to dismiss the ITC case against the GPG products. That motion was granted.

On appeal, Leviton essentially makes three arguments: (1) the forum selection clause does not apply because it does not extend to cases in which the only relationship the Settlement Agreement bears to the subsequent dispute is that it possibly gives rise to a defense; (2) even if the forum selection clause could apply in such cases, the Settlement Agreement does not give rise to an implied license defense in the present case as a matter of law; and (3) the district court erred in its application of the remaining three preliminary injunction factors.

Leviton timely appealed and this court has jurisdiction pursuant to 28 U.S.C. §§ 1292(a)(1), 1292(c)(1), and 1295(a)(1).

## II. DISCUSSION

### A.  Standard of Review

Although this court generally applies the law of the respective regional circuit on questions of procedure, this court applies its own law in reviewing procedural matters arising from substantive issues in areas of law within its exclusive jurisdiction. *See Tex. Instruments Inc. v.*

*Tessera Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000). In a case such as this, involving an injunction against participation in a district court suit for patent infringement and an ITC investigation under section 337 of the Tariff Act, this court's procedural law applies. *Id.* "Under Federal Circuit law, this court sustains a grant or denial of a preliminary injunction unless the district court abused its discretion, or based its decision on an erroneous legal standard or clearly erroneous findings of fact." *Id.*

## B.  Likelihood of Success on the Merits

### 1.  Forum Selection Clause

The forum selection clause in the Settlement Agreement states in relevant part that "any dispute between the Parties relating to or arising out of this [Settlement Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico." *Gen. Protecht*, 2010 WL 5559750, at *3. Thus, whether GPG is likely to succeed on the merits of applying the forum selection clause depends on whether its implied license defense crosses the threshold required to trigger the "relating to or arising out of" provision of that clause. The parties disagree about how high this threshold really is.

As Leviton argues, if all that is required is a license and a bare allegation that it provides a defense, then virtually every subsequent dispute between contracting parties would trigger such a forum selection clause. On the other hand, as GPG argues, if a party seeking to enforce a forum selection clause in the context of a license defense must first establish, conclusively, that it would win the license defense, such a forum selection clause would be meaningless because if the defense should fail, then the merits would have been litigated in a forum

other than that which was bargained for; and if the defense should succeed, there would likely be nothing left to litigate once the case arrives in the proper forum.

In *Texas Instruments*, this court held that "[p]atent infringement disputes do arise from license agreements" and that where "the governing law clause of the license agreement is not limited to license related issues such as the amount of royalty due, term of agreement, and cross licensing[, that clause,] . . . as in any patent license agreement, necessarily covers disputes concerning patent issues." 231 F.3d at 1331. This case presents a non-frivolous dispute regarding the scope of a patent license. The outcome of that dispute will determine whether the patentee can sustain its suit for infringement. Thus, there is no question in this case that the dispute "relates to or arises out of" the Settlement Agreement. The forum selection clause therefore applies, and the district court did not abuse its discretion in granting the preliminary injunction on that basis.

## 2.  Implied License

The controlling case on the implied license question presented here is *TransCore v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271 (Fed. Cir. 2009). In settling a prior case, TransCore had in effect licensed MARK IV by covenanting not to sue under multiple patents covering automated toll collection technology. *Id.* at 1273. The settlement agreement included the following provisions:

> [TransCore] hereby agrees and covenants not to bring any demand, claim, lawsuit, or action against MARK IV for future infringement of [the asserted patents] for the entire remainder of the terms of the respective [patents]. This Covenant Not

> To Sue shall not apply to any other patents issued as of the effective date of this Agreement or to be issued in the future.
>
> . . .
>
> TransCore . . . fully and forever release[s], discharge[s] and dismiss[es] all claims, demands, actions, causes of action, liens and rights, in law or in equity (known, unknown, contingent, accrued, inchoate or otherwise), existing as of June 26 2001, that [it has] against MARK IV . . . but excluding any claims for breach of this Agreement. No express or implied license or future release whatsoever is granted to MARK IV or to any third party by this Release.

*Id.*

Later, TransCore sued Electronic Transaction Consultants Corp. ("ETC"), a third party consulting and systems integration firm engaged by MARK IV, for infringement of three of the same patents and—important for this case—one additional "related patent that was pending before the Patent and Trademark Office but had not yet issued at the time of the TransCore-Mark IV settlement." *Id.* at 1273-74.

The court found that TransCore's rights in the previously asserted patents, as against MARK IV technology, were exhausted by its covenant not to sue MARK IV. *Id.* at 1274. As to the continuation patent, the court found that it was impliedly licensed to MARK IV and that the implied license also exhausted TransCore's rights in that patent as against the MARK IV technology being installed by ETC. *Id.* at 1278-79.

As this court reiterated in *TransCore*:

> The essence of legal estoppel that can be found in the estoppel of the implied license doctrine involves the fact that that the licensor . . . has licensed . . . a definable property right for valuable consideration, and then has attempted to derogate or detract from that right.  The grantor is estopped from taking back in any extent that for which he has already received consideration.

*Id.* at 1279 (quoting *AMP Inc. v. United States*, 389 F.2d 448, 452 (1968)).  As this court further explained, "[t]he basic principle is . . . quite simple: 'legal estoppel refers to a narrow[] category of conduct encompassing scenarios where a patentee has licensed or assigned a right, received consideration, and then sought to derogate from the right granted.'"  *Id.* (quoting *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997)).

The *TransCore* court then held that "Mark IV's rights under its implied license to the [continuation patent] are necessarily coextensive with the rights it received in the TransCore-Mark IV license agreement."  *Id.* at 1279-80.  And the court found that:

> [t]he language of the . . . settlement agreement, which states that "[t]his Covenant Not To Sue shall not apply to any other patents . . . to be issued in the future," is not to the contrary.  This language may protect TransCore against broad claims that future patents generally are impliedly licensed, but it does not

permit TransCore to derogate from the
rights it has expressly granted[.]

*Id.* at 1279.

In the present case, the New Mexico district court explained that "[u]nder *TransCore* . . . the [Settlement Agreement] granted an implied license to the '124 and '151 patents, if [GPG] must practice the '124 and '151 patents to obtain the benefit of their bargain to practice the '766 and '558 patents." *Gen. Protecht*, 2010 WL 5559750, at *19. Finding this condition met, the court ruled in GPG's favor. The district court also responded to Leviton's argument that this case could involve other products outside the scope of the Settlement Agreement by noting that "if Leviton wishes to conduct discovery whether other products allegedly infringe its patents, it may conduct such discovery in this forum." *Id.* at *21.

On appeal, Leviton argues that *TransCore* does not control the present case because: (1) *TransCore* is limited to cases where the claims of the continuation are broader than and therefore necessary to practice the claims of the expressly licensed patents; (2) the manifest mutual intent of the parties in the present case was to convey narrower rights than were conveyed in *TransCore* such that no license can be implied here; and (3) such a result conflicts with this court's holding in the earlier decided case of *Jacobs v. Nintendo of America*, 370 F.3d 1097 (Fed. Cir. 2004). We address each argument in turn.

i. The Effect of *TransCore*

Here, Leviton urges that, because at least some claims of its continuations are narrower than the previously asserted claims, asserting the newer, narrower claims does not "derogate" from the right to practice the licensed claims. Leviton notes that its new claims have

limitations such as a "three-wire electrical circuit," a "mounting flange," and a "three-hole socket," which were not claimed in the licensed patents.

Leviton cannot deny, however, that the newly asserted continuations are based on the same disclosure as the previously licensed patents and that, by definition, the continuations can claim no new invention not already supported in the earlier issued patents. Moreover, the same products accused in the earlier suit are accused here.

*TransCore* prohibits a patent licensor from derogating from rights granted under the license by "taking back in any extent that for which [it] has already received consideration." 563 F.3d at 1279 (quotation omitted). In this case, Leviton's actions have unquestionably derogated from GPG's rights under the Settlement Agreement. The same products were accused. The same inventive subject matter was disclosed in the licensed patents. If Leviton did not intend its license of these products to extend to claims presented in continuation patents, it had an obligation to make that clear.

From our holding in *TransCore* it reasonably follows that where, as here, continuations issue from parent patents that previously have been licensed as to certain products, it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well. If the parties intend otherwise, it is their burden to make such intent clear in the license. It is well settled that parties are free to contract around an interpretive presumption that does not reflect their intentions. Indeed, "patent license agreements can be written to convey different scopes of promises not to sue, *e.g.*, a promise not to sue under a specific patent or, more broadly, a promise not to sue under any patent the licensor now has or may acquire

in the future." *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987). In this case, Leviton did not do so.

## ii. Mutual Intent of the Parties

Leviton argues that the mutual intent of the parties in the present case distinguishes this case from the facts of *TransCore*. Leviton contends that a number of provisions in the Settlement Agreement make clear that the parties intended that settlement to be merely a "walk away." Appellant's Reply Br. at 8. For instance, Leviton refers to provisions preserving Leviton's right to sue on related patents and GPG's right to rely on the prior claim constructions and its inequitable conduct defense. Leviton argues that each of these provisions, by anticipating future litigation, evidences mutual intent not to grant any rights that would imply a license to any other patents.

*TransCore* is instructive in addressing Leviton's arguments. The Settlement Agreement there stated that "This Covenant Not To Sue shall not apply to any other patents issued as of the effective date of this Agreement or to be issued in the future." *TransCore*, 563 F.3d at 1273. Nonetheless, this court found that, by filing the subsequent suit, TransCore had derogated from the right it previously granted and that therefore the continuation patent was impliedly licensed.

The provisions to which Leviton points manifest a mutual understanding that future litigation between the parties concerning related patents was a distinct possibility. But this does not address the question of whether the parties intended that continuations could be asserted against the same products. At best, the Settlement Agreement is silent on this point. At worst, the careful establishment of rules of engagement without any men-

tion of later suits involving the same products and related patents shows that Leviton did not reserve this right. *Expressio unius exclusio alterius.* The question of mutual intent in the present case is controlled by *TransCore.*

### iii. *Jacobs* Does Not Conflict

Finally, Leviton argues that, if interpreted to compel a finding of implied license in the present case, then *TransCore* conflicts with this court's prior holding in *Jacobs v. Nintendo of America,* 370 F.3d 1097 (Fed. Cir. 2004), and this court must follow *Jacobs* as the first-decided case. According to Leviton, *Jacobs* compels a finding that there is no implied license here. Leviton is wrong on both counts: *Jacobs* neither conflicts with *TransCore* nor controls this case.

In *Jacobs,* the patentee had previously licensed a patent covering the use of micromachined accelerometers as components in tilt-sensitive control boxes. 370 F.3d at 1098. Analog Devices, Inc. ("Analog") made micromachined accelerometers and provided them to third parties who included them in control boxes. *Id.* Jacobs had previously sued Analog for indirect infringement. *Id.* In settling that prior case, the parties agreed to the following provisions:

> *License.* Jacobs grants Analog an irrevocable, perpetual, fully paid up license to take any actions set forth in 35 U.S.C. § 271 which would, but for this license, constitute an infringement or violation of Jacobs' patent rights under the [asserted patent]. Without limiting the foregoing, the license granted hereunder includes the right to make, use, sell, import and export components, including micromachined ac-

celerometers, for use in tilt-sensitive con-
trol boxes.

*Covenant-not-to-sue.* Jacobs covenants not
to sue Analog for any alleged infringement
or violation of the [asserted patent]. This
covenant-not-to-sue extends to any cause
of action having as an element the in-
fringement of the [asserted patent] by
Analog or any other party, whether occur-
ring in the past, present, or in the future.

*Id.* at 1098-99.

This court found that these provisions, taken to-
gether, meant that Nintendo had an implied license to use
Analog's micromachined accelerometers in its products.
*Id.* at 1101-02. In its analysis, the court discussed the
"license" provision and the "covenant not to sue" provi-
sion, explaining that the covenant not to sue merely
provided "peace" whereas the license provided "prosper-
ity." *Id.* at 1099. Important to Leviton's argument, the
court opined that "[i]f all that Jacobs intended to do
through the settlement agreement was to free Analog of
its liability for infringement . . . the covenant not to sue
. . . would have been fully sufficient to serve that pur-
pose." *Id.* at 1101.

Leviton argues that this statement from *Jacobs*
means that "covenant not to sue" language evidences a
narrow intent that cannot give rise to an implied license.
But Leviton carefully points out that it is not saying that
"the use of the term 'covenant not to sue' in *Jacobs* meant
there could be no implied license or that a covenant not to
sue is not a license." Appellant's Reply Br. at 15. Indeed,
at oral argument, Leviton admitted that *Jacobs* did not
hold that a covenant not to sue did not give rise to an
implied license, and stated that *Jacobs* supported that

view only "by negative inference."   Oral Arg. at 11:27-12:18 available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2011-1115.mp3.  Even if Leviton's reading of the import of that statement were correct, this would not be a direct conflict of panel opinions as is necessary to invoke this court's rule of precedence.  *See Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1998).

We find nothing in the reasoning or holding of *Jacobs* that conflicts with *TransCore* or supports, by "negative inference" or otherwise, the proposition advanced by Leviton.

## C.   Other Injunction Factors

In granting GPG's request for a preliminary injunction, the district court considered the remaining injunction factors: irreparable harm to the moving party, balance of hardships, and public interest.  We address each of these factors in turn.

### 1. Irreparable Harm

The district court found that GPG would likely be irreparably harmed in the absence of a preliminary injunction because it would be deprived of its bargained-for forum and because it would likely be forced to litigate the same issues on multiple fronts at the same time.  The district court relied on *Texas Instruments, Inc. v. Tessera*, No. C-00-2114 CW, slip. op. at 6 (N.D. Cal. Mar. 6, 2001), for the view that "litigating simultaneously in California and the ITC will cause financial and business hardship . . . [and that] the inconvenience and disruption to its business is irreparable."

Leviton argues that "deprivation of one's chosen forum . . . is not irreparable harm *per se*." Appellant's Br. at

50-51. Leviton cites *Camping Construction Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990), for this proposition. In *Camping Construction* the issue in dispute was whether the Norris-LaGuardia Act prohibited a district court from enjoining arbitration of a dispute arising under a collective bargaining agreement. Next, Leviton argues that litigating in multiple forums does not constitute irreparable harm because GPG allegedly "brought this on [itself]" by filing the second suit in the District of New Mexico. Appellant's Br. at 51. According to Leviton, GPG "should have raised [its] implied license argument in the California Action rather than file their declaratory judgment action [in New Mexico]." *Id.* Leviton also cites *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161 (10th Cir. 1982) for support. In *Hospah*, the Tenth Circuit remanded a New Mexico court's preliminary injunction against participating in copending Texas cases on the theory that the parties should have litigated the issue of forum in the first-filed court under the provisions of Federal Rule of Civil Procedure 12(b) and 28 U.S.C. §1404. *Id.* at 1162-3.

GPG responds that, in the absence of the preliminary injunction, it would face irreparable harm because of the expenses involved in defending the ITC proceeding and because its forum selection clause would be reduced to a nullity. GPG relies on district court decisions that are not binding on this court for each of these propositions.

We conclude that the district court's determination of irreparable harm was proper. Leviton's reliance on *Camping Construction Co.* is misplaced. That case involved the question of a district court's power to enjoin arbitration of a dispute arising under a collective bargaining agreement, consistent with the provisions of the Norris-Laguardia Act. 915 F.2d at 1334. The Ninth Circuit held:

> [A]n [arbitration] award, prior to judicial enforcement . . . . has no more effect than any provision of a collective bargaining agreement normally has; it cannot by itself inflict anything like irreparable injury [. . . . A] labor arbitration is likely to have therapeutic value even for the losing party or parties[.]

*Id.* at 1349. Unlike an arbitration, an ITC proceeding *can* have a direct and significant impact on a responding party and is not a "therapeutic" exercise.

Leviton's reliance on *Hospah* is equally unhelpful. As an initial matter, *Hospah* does not compel litigation of the license defense in California. At most it suggests that GPG should have sought to enforce the forum selection clause by first moving to dismiss or transfer in the California court rather than by preliminary injunction in a new action. But even assuming that that is what Leviton intended to argue, the argument is a non-sequitur: GPG was entitled to litigate this action in the District of New Mexico by virtue of the forum selection clause to which Leviton agreed. Any irreparable harm resulting from the incremental challenge of also litigating in California and the ITC, would be the consequence of Leviton's election to sue in two other forums, both of which it had already bargained away. Moreover, by suing in both California and the ITC, Leviton had already imposed the burden of dual litigations on GPG, notwithstanding the automatic stay of the district court case pending the 337 investigation. At most, Leviton has suggested that GPG would not suffer irreparable harm as a result of litigating the choice of forum first in California. But litigating the choice of forum issue itself is not the basis of irreparable harm in the present case.

Moreover, *Hospah* does not control. In *Texas Instruments*, the Court held that the question of whether to enjoin participation in a section 337 action would be evaluated under this court's procedural law. 231 F.3d at 1328. Likewise, in *Laboratory Corporation of America Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004), in affirming a district court's injunction against a party's further prosecution of a copending action in another district court, this court held that "because of the importance of national uniformity in patent cases . . . injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts are reviewed under the law of the Federal Circuit." This holding establishes not only that Federal Circuit, and not Tenth Circuit, precedent controls this case, but also that the remedy of injunction is appropriate in these circumstances.

The district court's finding of irreparable harm, being neither clearly erroneous nor predicated on an error of law, will not be disturbed.

## 2. Balance of Hardships

The district court found that the balance of hardships favored the injunction because GPG would suffer the hardships of litigating on two fronts and being deprived of its bargained-for forum, as discussed above, but Leviton could obtain substantially the same relief in district court as in the ITC.

Leviton's argument concerning the balance of hardships relies upon its critique of GPG's allegations of irreparable harm, and adds that Leviton is being deprived of the benefits of a unique forum with unique remedies.

GPG argues that Leviton could get the same relief in district court, and that Leviton should not be able to count

as hardship its inability to avail itself of a forum it knowingly bargained away.

We conclude that the court did not abuse its discretion in finding that the balance of hardships favored the injunction. Having contracted for a specific forum, Leviton should not be heard to argue that the enforcement of the contract into which it freely entered would cause hardship.

### 3. Public Interest

The district court also found that the public interest was best served by entering the preliminary injunction. The district court largely relied on *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972), for the proposition that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The district court understood this statement to indicate that enforcement of forum selection clauses is, generally, in the public interest.

Leviton argues that the "noncontroversial statement that public policy favors enforcement of valid forum selection clauses" Appellant's Br. at 52. does not apply because the forum selection clause does not govern this dispute, and because it is contrary to public interest to hinder an agency investigation.

GPG responds that the forum selection clause does govern, and that, accepting this, Leviton does not appear to dispute the proposition that forum selection clauses should be enforced. GPG also argues that the injunction does not apply to the ITC as such, but only to Leviton.

We agree with the district court that public policy favors the enforcement of the forum selection clause in this

case.    Moreover, we find Leviton's argument that the injunction contravenes public interest by hindering an agency investigation unpersuasive.    As this court explained in *Texas Instruments*, "section 337 proceedings at the ITC are recognized as litigation."   231 F.3d at 1331. The preliminary injunction here "will not and cannot enjoin the ITC action."   *Id.* at 1332.   There is no public interest served by excusing a party's violation of its previously negotiated contractual undertaking to litigate in a particular forum.

For these reasons, the district court correctly applied the factors of irreparable harm, balance of hardships, and public interest.   The grant of the preliminary injunction was not an abuse of discretion.

## III. CONCLUSION

For the foregoing reasons, the district court's issuance of a preliminary injunction is affirmed.

**AFFIRMED**