# United States Court of Appeals for the Federal Circuit

---

**CHEETAH OMNI LLC,**
*Plaintiff-Appellant*

**v.**

**AT&T SERVICES, INC., A DELAWARE CORPORATION, CIENA CORPORATION, CIENA COMMUNICATIONS, INC.,**
*Defendants-Appellees*

---

2019-1264

---

Appeal from the United States District Court for the Northern District of Texas in No. 3:17-cv-01993-K, Judge Ed Kinkeade.

---

Decided: February 6, 2020

---

THOMAS A. LEWRY, Brooks Kushman PC, Southfield, MI, argued for plaintiff-appellant. Also represented by DAVID C. BERRY, CHRISTOPHER C. SMITH.

L. NORWOOD JAMESON, Duane Morris LLP, Atlanta, GA, argued for all defendants-appellees. Defendant-appellee AT&T Services, Inc. also represented by MATTHEW YUNGWIRTH, ALISON HADDOCK HUTTON; CHRISTOPHER JOSEPH TYSON, Washington, DC.

MATTHEW J. MOORE, Latham & Watkins LLP, Washington, DC, for defendants-appellees Ciena Corporation, Ciena Communications, Inc.  Also represented by GABRIEL BELL, ABIGAIL A. RIVES; CLEMENT J. NAPLES, New York, NY.

————————————

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Cheetah Omni LLC ("Cheetah") appeals from the judgment of the U.S. District Court for the Northern District of Texas dismissing its infringement claims against appellees AT&T Services, Inc. ("AT&T") and Ciena Communications, Inc. and Ciena Corporation (collectively, "Ciena") with prejudice.  Judgment, *Cheetah Omni LLC v. AT&T Servs., Inc.*, No. 3:17-cv-01993-K (N.D. Tex. Oct. 23, 2018), ECF No. 130.  For the reasons detailed below, we affirm.

## BACKGROUND

Cheetah owns U.S. Patent 7,522,836 ("the '836 patent") directed to optical communication networks.  AT&T uses a system of hardware and software components in its AT&T fiber optic communication networks.

In the district court, Cheetah asserted that AT&T infringes the '836 patent by making, using, offering for sale, selling, or importing its fiber equipment and services.  In response to the allegations, Ciena moved to intervene in the suit because it manufactures and supplies certain components for AT&T's fiber optic systems and because those components formed the basis of some of Cheetah's infringement allegations.  The court granted Ciena's motion to intervene.

Ciena and AT&T then moved for summary judgment that Cheetah's infringement claim was barred by agreements settling previous litigation.  Specifically, Cheetah had brought suit against Ciena and Fujitsu Network

Communications ("Fujitsu") and executed two license agreements—one with Ciena and one with Fujitsu. In their motion, Ciena and AT&T argued that the two prior licenses included implicit licenses to the '836 patent covering all of the accused products. The district court agreed, granting summary judgment and dismissing the suit with prejudice. Memorandum Opinion and Order, *Cheetah Omni LLC v. AT&T Servs., Inc.*, No. 3:17-cv-01993-K (N.D. Tex. Oct. 23, 2018), ECF No. 129 ("*Decision*").

Cheetah appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a grant of summary judgment under the law of the regional circuit, which in this case is the Fifth Circuit. *See Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013) (citing *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012)). The Fifth Circuit reviews a grant of "summary judgment *de novo.*" *Patel v. Texas Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (citing *Ezell v. Kan. City S. Ry. Co.*, 866 F.3d 294, 297 (5th Cir. 2017)).

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). We construe the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *R & L Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013) (quoting *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Fifth Circuit "review[s] the district court's legal conclusions, including its interpretation of contracts, *de novo.*" *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 777 (5th Cir. 2006) (citing *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) and *Nolan v. Golden Rule Ins. Co.*, 171 F.3d 990, 992 (5th Cir. 1999)).

To frame the parties' dispute, a review of the previous litigation and resulting settlements is necessary. In 2011, Cheetah brought suit against, *inter alia*, Ciena and Fujitsu, accusing certain Reconfigurable Optical Add/Drop Multiplexer ("ROADM") products of infringing, *inter alia*, U.S. Patent 7,339,714 ("the '714 patent"). *See* Complaint, *Cheetah Omni LLC v. Alcatel-Lucent USA Inc.*, No. 6:11-cv-00390-TBD (E.D. Tex. July 29, 2011), ECF No. 1. Cheetah settled the ROADM case with both Ciena and Fujitsu, executing two separate agreements with each party: a covenant not to sue and a license. Relevant here are the license agreements ("licenses").

The licenses granted to Ciena and Fujitsu do not differ in any material respect for purposes of the present appeal, so we treat the Ciena license as representative. Cheetah granted to Ciena "a perpetual, irrevocable, worldwide, non-exclusive, fully paid-up license under the Licensed Patents to make, have made (directly or indirectly and solely for Ciena or its Affiliates), use, offer to sell, sell, and import and export the Licensed Products." J.A. 411. The agreement defined "Licensed Patents" to mean

> (i) the Patents-in-Suit, and (ii) all parents, provisionals, substitutes, renewals, continuations, continuations-in-part, divisionals, foreign counterparts, reissues, oppositions, continued examinations, reexaminations, and extensions of the Patents-in-Suit owned by, filed by, assigned to or otherwise controlled by or enforceable by Cheetah or any of its Affiliates or its or their respective successors in

interest at any time as of, prior to, on or after the Effective Date, whether filed before, on or after the Effective Date.

J.A. 410. The "Effective Date" was defined as "the earliest date upon which all Parties ha[d] signed th[e] Agreement or identical counterparts thereof." J.A. 411. The "Licensed Products" were defined as

(i) all past, present or future Ciena or Ciena Affiliate products, services or combinations, components, or systems of products or services, and any modifications or enhancements thereof, that could by themselves or in combination with other products, services, components or systems, be alleged to infringe at least one claim of at least one Licensed Patent in the absence of a license under this Agreement and (ii) all Ciena products identified or accused by Cheetah of infringing any claim of any of the Patents-in-Suit in its complaint, amended complaint, infringement contentions, or otherwise.

J.A. 410.

Key to the parties' dispute is the relationship between the '836 and '714 patents. The '714 patent is a continuation-in-part of U.S. Patent 6,943,925 ("the '925 patent"). The '836 patent is a continuation of U.S. Patent 7,145,704 ("the '704 patent"), which is also a continuation of the '925 patent. These relationships are depicted below:



Because the '714 patent was asserted in the ROADM litigation, it is necessarily included in the Ciena license. By its terms, the Ciena license also includes "all parents" to the patents in the ROADM litigation, and, as the parent to the '714 patent, the '925 patent is likewise an expressly licensed patent under the agreement, even if not enumerated. The question we are presented with here, however, is whether the '836 patent, a continuation of a continuation of the '925 patent, *i.e.,* its grandchild, is impliedly licensed under the Ciena license. In personal terms, because the uncle and grandparent of the '836 patent, are licensed, is the '836 patent also licensed?

Relying on our holding in *General Protecht Group Inc. v. Leviton Manufacturing Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011), the district court determined that the '836 patent was impliedly licensed as the grandchild of the expressly licensed '925 patent. *Decision*, slip op. at 10. The district court reasoned that an express license of the '925 patent included an implied license for its continuations "because those continuations disclose the same inventions as the licensed patent." *Id.* We agree.

Cheetah's primary argument to the contrary is that the parties did not intend that the licenses extend to the '836 patent. In settling the ROADM litigation, Ciena and Fujitsu each executed a license and a separate covenant not to sue, and the covenants not to sue expressly included the '836 patent, while the licenses did not. Further, Fujitsu was aware of the '836 patent due to its participation and settlement of a previous litigation where the '836 patent was at issue. According to Cheetah, all parties were aware of the '836 patent, and if they had intended to include the '836 patent, the patent would have been expressly named in the license agreements.

Cheetah also argues that the '836 patent covers an invention different from the inventions claimed in the patents at issue in the ROADM litigation. Cheetah contends

that the '836 patent claims are directed to a system that includes ROADM technology in combination with other components, while the ROADM patents cover only ROADM functionality.  Cheetah further argues that the accused AT&T products are not "Licensed Products" within the scope of the licenses.

AT&T and Ciena respond that neither license agreement expressly lists all included patents by number and, instead, only lists broad categories of patents.  AT&T and Ciena also note that the parties *did exclude* other patents explicitly: the Ciena covenant recited a list of medical patents the parties expressly excluded from the agreement.  Thus, Ciena argues, if the parties had mutually intended to exclude the '836 patent, they would have done so explicitly.

As for Cheetah's other arguments, AT&T and Ciena maintain that the licenses are not limited to any particular claims of the patents from the ROADM litigation and, by including continuations, contemplate "the entirety of the disclosed inventions and *any* claims that could issue from such disclosed inventions." AT&T and Ciena Br. 30.  AT&T and Ciena also submit that the accused AT&T system is a "Licensed Product" within the scope of the licenses because the definition of "Licensed Product" extends to Ciena and Fujitsu products in combination with other products.  In the alternative, AT&T and Ciena argue that Cheetah's claims are also barred by the covenants not to sue.

We agree with the district court, and with AT&T and Ciena, that the licenses include an implied license to the '836 patent that extends to the accused AT&T systems.  Legal estoppel prevents licensors from derogating or detracting from definable license rights granted to licensees for valuable consideration.  *AMP Inc. v. United States*, 389 F.2d 448, 452 (Ct. Cl. 1968).  In *TransCore*, we interpreted legal estoppel to provide an implied license to a related, later-issued patent that was broader than and necessary to

practice an expressly licensed patent. *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009).

Two years later, we considered whether an express license to a patent includes an implied license to its continuations, even when the continuation claims are narrower than previously asserted claims. *General Protecht*, 651 F.3d at 1361. Relying on *TransCore*, we answered that question in the affirmative: "Where . . . continuations issue from parent patents that previously have been licensed as to certain products, it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well." *Id.* We further explained that parties could contract around the presumption of an implied license if it did not "reflect their intentions" but that it was the parties' burden to "make such intent clear in the license." *Id.*

In *General Protecht*, the continuation patent at issue had not yet issued at the time of the parties' express license of the parent patent. Cheetah attempts to cabin *General Protecht*'s holding to express licenses executed before the issuance of a continuation patent. We decline to read *General Protecht* so narrowly. The timing of patent issuance is not material to the policy rationale underpinning our implied license presumption. *See TransCore*, 563 F.3d at 1279. Moreover, if anything, it is *easier* for the parties to clearly identify an already-issued continuation and expressly exclude it from a license agreement.

Applying the presumption established in *General Protecht* provides a simple and clear resolution in this case. Because the '925 patent is an expressly licensed patent in the licenses, the licenses also include an implied license to a continuation of its continuation, the '836 patent. To the extent Cheetah argues that the '836 patent claims cover a different invention from or are narrower than the '925 patent claims, the answer is that the same inventive subject

matter was disclosed in the expressly licensed patents. If Cheetah did not intend its license "to extend to claims presented in continuation patents, it had an obligation to make that clear." *General Protecht*, 651 F.3d at 1361. The expectation is properly placed on the patent owner, Cheetah, to specifically carve out continuation patents that it intended to exclude because Cheetah has the most information about its total patent portfolio. If Cheetah had a contrary intent, it could have made its intent clear in the agreement as a matter of contract drafting.

Cheetah attempts to evade the presumption that a license to a patent includes a license to its continuation by arguing that the parties had knowledge of the '836 patent and would have named it expressly if they mutually intended that it be included. The naming of certain patents expressly, however, does not evince a clear mutual intent to exclude other patents falling within the general definitions in an agreement. That is especially true here where the licenses list broad categories of patents without reciting their numbers individually.

Cheetah finally argues that the AT&T products accused in this litigation are not "Licensed Products" within the scope of the licenses. But the Ciena license defines "Licensed Products" as "all past, present, or future Ciena or Ciena Affiliate products . . . that could by themselves or *in combination with other products, services, components* or systems, be alleged to infringe at least one claim of at least one Licensed Patent." J.A. 410 (emphasis added). The accused AT&T systems combine Ciena and Fujitsu products with other components and are thus Licensed Products within the meaning of the licenses.

Because the licenses extend to both the '836 patent and the AT&T products accused in this litigation, the district court properly granted summary judgment for AT&T and Ciena and dismissed the infringement suit. And because we have concluded that AT&T's products are licensed

under the license agreement, we need not consider the scope of the covenant not to sue.

## CONCLUSION

We have considered Cheetah's remaining arguments but find them unpersuasive. Accordingly, the judgment of the district court is affirmed.

**AFFIRMED**