NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

———————————————

**MICHAEL L. MCGINLEY, S.C. PRODUCTS, INC.,**
*Plaintiffs-Appellants*

**v.**

**LUV N' CARE LTD., ADMAR INTERNATIONAL, INC., BAYOU GRAPHICS & DESIGN, LLC, BUYBABYDIRECT, LLC, CONTROL SERVICES, INC., HHHII, LLC,**
*Defendants-Cross-Appellants*

———————————————

2019-2175, 2019-2190

———————————————

Appeals from the United States District Court for the Western District of Louisiana in No. 3:17-cv-00821-TAD-KLH, Judge Terry A. Doughty.

———————————————

Decided:  July 29, 2020

———————————————

KIP D. RICHARDS, Walters Renwick Richards Skeens & Vaughan, P.C., Kansas City, MO, for plaintiffs-appellants.

ROBERT M. CHIAVIELLO, JR., NubyLaw, Monroe, LA, for defendants-cross-appellants.

———————————————

Before NEWMAN, O'MALLEY, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Michael L. McGinley is the inventor of a container or pitcher having a "flexible side wall portion" that can conform to the shape of a child's head, patented under U.S. Patent No. 8,636,178 (the "'178 patent"). Mr. McGinley and S.C. Products, Inc. (SCP) (collectively "McGinley"), brought a patent infringement suit against Luv N' Care, Ltd. ("Luv"), and a number of other companies, including Admar International, Inc. ("Admar"), BuyBabyDirect, LLC ("BBD"), Bayou Graphics and Design, LLC ("BGD"), Control Services, Inc. ("CS"), and HHHII, LLC ("HHHII") (collectively "LNC") that are commonly-owned and controlled by Luv and its principals. On LNC's motions for summary judgment, the United States District Court for the Western District of Louisiana ruled that LNC had not infringed the '178 patent, either literally or under the doctrine of equivalents, and that LNC had not shown that the '178 patent was invalid. We reverse-in-part and affirm-in-part the district court's claim construction order, vacate the district court's order granting summary judgment of noninfringement, affirm the district court's order denying summary judgment of invalidity, vacate the district court's order dismissing Count III and awarding costs, and remand for further consideration.

BACKGROUND

The '178 patent was filed on October 22, 2008, issued on January 28, 2014, and is directed to a container or pitcher "having a flexible side wall portion and rim portion . . . which can conform to the shape of an object." '178 Patent, Abstract. The specification indicates that the primary purpose of the container is for rinsing shampoo or

soap from the head of a child. *Id.* at col. 2 ll. 57–63. Figures 6 and 9 illustrate embodiments of the container.



*Id.* at Figs. 6 & 9. The specification states that the container has continuous sidewalls (12) with one of the sidewalls having a sidewall portion (24) with a flexible panel portion (28). *Id.* at col. 4, ll. 4–61. The specification further states that the flexible panel portion is constructed of a thin flexible plastic or a flexible rubber panel that is capable of conforming to the shape of the head of a child. *Id.* at col. 4, ll. 43–61. In operation, the flexible panel portion is pressed against the front of the head above the eyes and the rinse water pours over the top of the head. *Id.* at col. 2, ll. 57–63. The specification indicates that the flexible panel portion prevents the rinse water from flowing into the child's eyes or face. *Id.*

In a preferred embodiment of the invention, sidewall portion (24) is generally flat and may therefore differ in its shape as compared to the remainder of sidewall rim (12) and sidewall (20). *Id.* at col. 4, ll. 30–34. For example, if sidewall (12), in its construction, comprises a cylindrical container, then sidewall rim (20) will be comprised of a generally circular sidewall rim portion (26) and a generally flat sidewall rim portion or sidewall segment or rim segment (24). *Id.* at col. 4, ll. 34–38. The specification states, however, that generally continuous sidewall (12) can be of

any convenient shape, spanning shapes from square to circular to polygonal. *Id.* at col. 4, ll. 5–7.

The '178 patent has two independent claims, 1 and 6, both of which include a continuous sidewall "having a flexible portion thereof that defines a generally flat sidewall section and a generally non flexible portion." For purposes of this appeal, claim 1 is representative and reads:

> A container comprising:
>
> a generally continuous sidewall terminating in an upper sidewall end and a lower sidewall end and defining an inward fluid holding space bounded by said continuous sidewall, said continuous sidewall having a flexible portion thereof that defines a *generally flat sidewall section* and a generally non flexible portion joined on either end to the flexible portion, a bottom closing said lower sidewall end with said upper sidewall end being generally open,
>
> a *generally flat inwardly flexible panel* forming a portion of said *generally flat sidewall section* and extending to form at least a portion of said upper sidewall end, the flexible panel facing outwardly and being sized, shaped and sufficiently pliable to matingly mold to the head of a person during use; said flexible panel having a generally smooth inward surface for unobstructed fluid flow out of said open upper sidewall end, and
>
> a *handle* located on the non flexible portion opposite the flexible panel to allow a user to lift and pour the container when filled with liquid.

'178 Patent, claim 1 (disputed claim terms in italics).

LNC manufactures a rinse pail, having a flexible sidewall, referred to as the *Nuby Tear Free Rinse Pail* ("Accused Device"). On March 30, 2016, McGinley filed suit in the United States District Court for the Western District of

Missouri, naming Luv as the sole defendant. McGinley alleged Luv infringed the '178 patent on the basis of Luv's importation into the United States, making, using, offering for sale, and selling Luv's *Nuby Tear Free Rinse Pail*. Luv subsequently filed its own action in the Western District of Louisiana seeking a declaratory judgment of no infringement and patent invalidity together with counts directed to various state and federal unfair competition counterclaims. These claims were later asserted as counterclaims in the original action.

Luv's action in the Western District of Louisiana was transferred to the Western District of Missouri under the "first to file" rule and the two actions were consolidated. Before discovery started, the U.S. Supreme Court decided *TC Heartland, LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). Luv moved to transfer the case back to Louisiana. That motion was not opposed and the District Court for the Western District of Missouri transferred the consolidated actions back to the Western District of Louisiana. After the case was transferred to Louisiana, the district court granted McGinley's motion to amend his complaint. On July 27, 2018, McGinley filed an Amended Complaint adding to his Count I infringement claim against Luv, infringement claims against the remaining LNC defendants.

At the conclusion of discovery, the parties filed separate summary judgment motions directed to the question of infringement. McGinley's motion sought summary judgment that the Accused Device infringed claims 1, 2, 4, 6, 7 and 9. LNC's motion sought summary judgment that the Accused Device did not infringe any of the asserted claims because it did not include a "generally flat sidewall section" required by all asserted claims, a "generally flat inwardly flexible panel" required by claims 1, 2 and 4, or a "handle" as required by claims 1 and 6.

While the motions on the infringement issues were pending, LNC sought leave to file a motion for summary judgment of invalidity relating to the effective filing date to be accorded the '178 patent. In response, McGinley sought leave to file a cross-motion that the '178 patent was entitled to the filing date of earlier applications. The district court granted both requests and the parties filed their cross motions directed to the invalidity issue.

Since many of the noninfringement and invalidity issues hinged on the proper interpretation of claim terms, the district court determined that it would benefit from a separate hearing on claim construction and set a *Markman* hearing for April 3, 2019. The parties requested, and the district court agreed, to allow argument on the summary judgment motions at the same time as the *Markman* hearing. The district court issued its claim construction order on May 15, 2019. *McGinley v. Luv N' Care, Ltd.*, No. 3:17-CV-00821, 2019 WL 2150384 (W.D. La. May 15, 2019). On the same day, the district court issued its opinions and judgments on the parties' motions for summary judgment. The district court granted LNC's motion for summary judgment of noninfringement and denied McGinley's motion. *McGinley v. Luv N' Care, Ltd.*, No. 3:17-CV-00821, 2019 WL 2150386 (W.D. La. May 15, 2019). The district court denied LNC's motion for summary judgment of invalidity and granted McGinley's cross-motion. *McGinley v. Luv N' Care, Ltd.*, No. 3:17-CV-00821, 2019 WL 2150385 (W.D. La. May 15, 2019).

On June 19, 2019, the district court further ordered that McGinley's claims in Count III of the Amended Complaint[1] be dismissed without prejudice as moot given the

---

[1] McGinley's "Count III claims seek[] to hold Defendants jointly and severally liable as a 'single business enterprise'" under Louisiana state law "for any damages or relief" that McGinley "recover[s] for the patent

Court's summary judgment of noninfringement, and ordered that LNC is the prevailing party and will be awarded chargeable cost under 28 U.S.C. § 1920. *McGinley v. Luv N' Care, Ltd.*, No. 3:17-CV-00821, 2019 WL 3282926, at *3–5 (W.D. La. July 19, 2019).

The parties timely filed Notices of Appeal and Cross-Appeal, and this appeal followed.

## DISCUSSION

We review a grant of summary judgment under the law of the regional circuit, which in this case is the Fifth Circuit. *See Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013) (citing *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012)). The Fifth Circuit reviews a grant of "summary judgment *de novo*." *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (citing *Ezell v. Kan. City S. Ry. Co.*, 866 F.3d 294, 297 (5th Cir. 2017)).

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Cheetah Omni LLC v. AT&T Servs., Inc.*, 949 F.3d 691, 693 (Fed. Cir. 2020). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2005).

---

infringement alleged in Counts I and II of the Amended Complaint." *McGinley v. Luv N' Care, Ltd.*, No. 3:17-CV-00821, 2019 WL 3282926, at *3 (W.D. La. July 19, 2019). The claims of relief stated in Count III are dependent on McGinley's ability to recover infringement damages under Counts I or II. *Id.*

## I. Infringement

The district court determined as a matter of law that the Accused Device does not infringe the '178 patent. An infringement analysis involves a two-step process: the court first determines the meaning of disputed claim terms and then the accused device is compared to the claims as construed. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384 (1996).

"[T]he ultimate issue of the proper construction of a claim should be treated as a question of law," which we review *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326, 135 S. Ct. 831, 838 (2015). Any subsidiary factual findings related to claim construction are reviewed under the clearly erroneous standard. *Id.* Whether an accused device or method infringes a claim either literally or under the doctrine of equivalents is a question of fact. Thus, on appeal from a grant of summary judgment of noninfringement, we must determine whether, after resolving reasonable factual inferences in favor of the patentee, the district court correctly concluded that no reasonable jury could find infringement. *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1335 (Fed. Cir. 2019).

### A. Claim Construction

The principal question in this case is whether the Accused Device meets the "generally flat" or "handle" limitations found in all asserted claims.

The "generally flat" limitations:

Before the district court, McGinley proposed construing "generally flat" as used in claims 1 and 6 in regard to a "sidewall section" as "a sidewall section that need not be exactly or perfectly flat, but is mostly flat." Similarly, McGinley proposed construing "generally flat" as used in claim 1 in regard to an "inwardly flexible panel" as "an inwardly flexible panel that need not be exactly or perfectly

flat, but is mostly flat." LNC, on the other hand, proposed construing "generally flat" as used in all asserted claim limitations as "mostly flat and not curved." While the parties agreed that the term "generally flat" is not limited to perfectly flat, the parties disputed whether the term "generally flat" allows for any curvature.

The district court found that the "parties' constructions are unhelpful and fail to consider the intrinsic record in its entirety." *McGinley*, 2019 WL 2150384, at \*14. First, the district court rejected LNC's construction "because it renders the adverb 'generally' meaningless." *Id.* According to the district court, LNC agrees that the term "generally flat" does not require "perfect flatness," but "propose[s] a construction that excludes everything that is not perfectly flat." *Id.* at \*14–15 (stating "a surface that does not have any curvature, arc, bend or bow, would necessarily be considered perfectly straight and flat"). Second, the district court rejected McGinley's construction because it fails to take into account the prosecution history and because construing "generally flat" to mean "mostly flat" provides little guidance. *Id.* at \*15. The district court thereafter adopted its own constructions for the "generally flat" limitations. It construed the term "generally flat sidewall section" to mean "a section of the sidewall that is not perfectly flat, and differs in its shape as compared to the remainder of the continuous sidewall." *Id.* at \*16. It construed the term "generally flat inwardly flexible panel" to mean "a portion of the flat sidewall section that is not perfectly flat, and differs in its shape as compared to the remainder of the continuous sidewall." *Id.*

On appeal, both parties argue that the district court misconstrued the "generally flat" claim limitations. As noted by LNC, the district court's "construction of the generally flat limitation has two parts." *See* Cross-Appellant's Br. 20. *Part one* requires "a section of the sidewall that is not perfectly flat" and *part two* requires that the sidewall section "differs in its shape as compared to the remainder

of the continuous sidewall." *Id.* This is an apt description of the district court's constructions. While we agree with much of the district court's analysis, for the reasons discussed below, these constructions are incorrect.

With respect to part one, LNC is correct that the district court's adoption of the "not perfectly flat" construction includes in that construction everything that is not perfectly flat, including the completely rounded or cylindrical surfaces of the prior art that McGinley has argued are not "generally flat." Cross-Appellants' Br. 21. Conversely, the district court's construction explicitly excludes wall sections that are "perfectly flat," which must also be considered "generally flat." *Id.*

With respect to part two, McGinley is correct that, by requiring the "generally flat sidewall section" to differ in shape from the remainder of the continuous sidewall, the district court "restricted, by implication, the shape that the invention's remaining continuous sidewall could take as well." Appellant's Br. 24. McGinley is correct that by construing the claim terms as it did, the district court effectively and impermissibly construed the asserted claims to limit the scope of the invention solely to one of the preferred embodiments—one having a "generally flat" sidewall section in the front and round/cylindrical sidewalls elsewhere.[2] *See id.* at 24–25. Such a construction contradicts

---

[2]    In its claim construction order, the district court found that "the 'generally flat' modifier . . . indicates that one of the differences between these sections and the remainder of the continuous sidewall is their shape." *McGinley*, 2019 WL 2150384, at *11 (citing '178 Patent, col. 4, ll. 30–34). While the district court correctly notes that the '178 patent states "a generally flat portion of side wall rim 20 . . . may . . . differ, generally, in its shape as compared to the remainder of side wall rim 12 and side

the patent specification, which states that the "generally continuous side wall 12 . . . can be of any convenient shape, spanning shapes from square to circular to polygonal." '178 Patent, col. 4, ll. 4–7.  If, for example, the continuous side wall is a square, each side would be a "generally flat side-wall section," and the claimed "generally flat sidewall section" would not differ in its shape as compared to the remainder of the continuous sidewall.

Accordingly, the district court's construction manages to be both too broad (part one), and too narrow (part two). Because the parties agree that resort to extrinsic evidence is unnecessary to ascertain the meaning of the claims, we may proceed to do so on our own.  A claim term is construed according to its ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*).  "[T]he court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  *Id.* at 1314 (citations and internal quotation marks omitted).

LNC reiterates on appeal that its "proposed construction of 'mostly flat and not curved'" is correct.  Cross-Appellants' Br. 24.  For reasons explained by the district court, however, we agree that LNC's proposed construction is too limiting. *See McGinley*, 2019 WL 2150384, at *15 ("[A] surface that does not have *any* curvature, arc, bend or bow, would necessarily be considered perfectly straight and flat.") (italics added)).  Indeed, a surface may have minor

wall 20," '178 Patent, col. 4, ll. 30–34, the specification does not require such differentiation.

curves and imperfections while remaining, as a whole, "generally flat."

McGinley argues that this court should adopt its newly proposed construction—borrowing language from the district court—of "generally flat": "mostly flat and not perfectly flat; and capable of having some curvature, arc, bend or bow." Appellant's Br. 26. The district court, however, only noted that "a surface that does not have any curvature, arc, bend or bow, would necessarily be considered perfectly straight and flat." *McGinley*, 2019 WL 2150384, at *15. We agree. Thus, the incorporation of this language into McGinley's proposed construction on appeal is duplicative—it translates to "mostly flat and not perfectly flat; and not perfectly straight and flat."

As below, McGinley's construction does not take into account arguments made during prosecution differentiating the asserted claims from the prior art. The district court correctly found that, during prosecution, McGinley "argued how the added limitation of 'generally flat' was not found in the prior art round pitchers in responding to [a] double patenting rejection." *McGinley*, 2019 WL 2150384, at *15. McGinley responds on appeal that "[t]he prosecution history is devoid of any evidence to show that McGinley intended to clearly distinguish the shape of the generally flat sidewall or flexible panel with the shape of the remaining sidewalls of the prior art containers." Appellant's Reply Br. 39. We are not convinced.

We agree with LNC that this case is similar to *Schoell v. Regal Marine Indus., Inc.* In *Schoell*, as here, the court was presented with the claim term "generally flat." Schoell's claims were initially rejected as obvious in view of an earlier Schoell patent. *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1208 (Fed. Cir. 2001), abrogated on other grounds by *Teva*, 574 U.S. 318. In response to the obviousness rejection, Schoell argued that his earlier patent "shows no generally flat aft keel," and instead

describes a V-shaped aft keel. *Schoell*, 247 F.3d at 1208. The court thus held that "not only did Schoell differentiate between a V-shaped keel and a generally flat keel, he essentially conceded that a twelve degree V-shaped keel cannot be a generally flat keel as claimed . . ." *Id.* Here, the USPTO issued a double patenting rejection because the claims of the '178 patent's underlying application were the same as those in McGinley's own earlier patent, disclosing fully rounded pitchers. McGinley amended the now-asserted claims during prosecution to include the "generally flat" limitation and argued that neither his prior patent nor the prior art claimed or disclosed, respectively, either a "generally flat sidewall section" or a "generally flat inwardly flexible panel." *McGinley*, 2019 WL 2150384, at *12–14. Instead, according to McGinley, the prior art disclosed "V-shaped" or "cylindrical" sidewalls or flexible panels. *See* J.A. 2187 (arguing that "flexible portion of Bertone [prior art] is V-shaped and not generally flat"); J.A. 2216 (distinguishing "generally flat" sidewall from cylindrical sidewall); J.A. 2236 (same). McGinley, himself, defines "cylindrical or round" as "something other than generally flat." Appellant's Br. 25. Thus, like Schoell, McGinley differentiated between V-shaped, round, or cylindrical on the one hand, and "generally flat" on the other.

While "generally flat," in this case, does not mean "perfectly flat," it (1) does not foreclose perfect flatness, and (2) can allow for minor imperfections, including curved portions. The limitations "generally flat sidewall section" and "generally flat inwardly flexible panel," however, cannot cover sidewall sections or inwardly flexible panels that are, as a whole, V-shaped, round, or cylindrical. Accordingly, we construe the term "generally flat," as used in all asserted claims, as "mostly flat and not, as a whole, V-shaped, round, or cylindrical." For example, a "generally flat" flexible portion could be one that deviates from flatness by transitioning from a curved sidewall to a flat section of the flexible portion. But, on the other hand, a flexible portion

that overall has a rounded shape would not be "generally flat."

The "<u>handle</u>" limitations:

Depending on the asserted claim, a "handle" must either be "located on" (claim 1) or "joined to" (claim 6) the non-flexible portion of the sidewall. Before the district court, McGinley proposed construing "handle" as "the part of a device that is designed or made to be grasped or held by the hand," "located on" as "is a part of," and "joined to" as "attached to, whether by separate manufacture and subsequent connection or by unitary construction or molding as an integrated unit." *McGinley*, 2019 WL 2150384, at *16. LNC proposed construing both "handle located on" and "handle joined to" as "handle attached." *Id.*

In its claim construction order, the district court found that the parties had not presented a fundamental dispute regarding the scope of a claim term, but instead argued an application of a claim term to an accused product. *Id.* at *17. For example, according to the district court, in LNC's briefing, it did not propose a construction for the terms "handle," "located on," or "joined to."[3] *Id.* Instead, LNC consistently argued that the accused product is missing the handle limitations. *Id.* Thus, the district court found that LNC had not presented or articulated a fundamental dispute regarding the scope of a claim term, and that the term "handle" is unambiguous, is easily understood by a jury, and should be given its plain and ordinary meaning. *Id.* (citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)). Similarly, the

---

[3] As noted by the district court, neither party provided constructions for the terms "located on" or "joined to" in their briefing, and both parties only proposed construing these terms after the *Markman* Hearing. *McGinley*, 2019 WL 2150384, at *18.

district court found that the terms "located on" and "joined to," are unambiguous, easily understandable by a jury, and should be given their plain and ordinary meaning. *Id.*

On appeal, LNC's argument again focuses on the application of the claim term to the Accused Device. *See* Cross-Appellants' Br. 51 (arguing the Accused Device "does not have a handle either "located on" or "joined to" the non-flexible portion of the container"). According to LNC, the Accused Device does not have a "handle,"[4] but instead has a "separate smaller liquid holding chamber that can be used to grip the rinse pail." *Id.* LNC argues that this smaller liquid holding chamber cannot be the claimed "handle" because: (1) it is part of a fully integrated container and if it were the "handle," the requirement that the container has a generally continuous sidewall is missing; (2) all of the embodiments shown in the '178 patent show a conventional handle, not one that operates as a separate chamber to hold rinse water; and (3) there is no suggestion in the written specification that the handle of the '178 patent is intended to hold rinse water. *Id.* at 52–54. Implicit in LNC's noninfringement position is an argument that the scope of this claim term must be limited to conventional handles, unintegrated into the container to which they are joined or on which they are located, and incapable of holding rinse water.

In addressing LNC's arguments below, the district court found that "the intrinsic evidence does not require a 'conventional handle,' or preclude the handle from including a chamber to hold rinse water." *McGinley*, 2019 WL

---

[4] McGinley argues, Appellants' Reply Br. 57, and the court notes, that this assertion is belied by LNC's own marketing material, which describes the Accused Device as having an "Easy Grip™ handle." *See, e.g.*, *Tear-Free Rinse Pail*, Nuby, https://www.nuby.com/usa/en/tear-free-rinse-pail-1-2.

2150384, at *17.  We agree.  As the district court correctly noted, it is well established that an inventor need not "embrace in the claims or describe in the specifications all possible forms in which the claimed principle may be reduced to practice." *Smith v. Snow*, 294 U.S. 1, 11, 55. S. Ct. 279, 283 (1935) ("[T]he claims of the patent, not its specifications, measure the invention.").  It is a bedrock principle of patent law that the claims of a patent, not its specification or the embodiments described therein, that define the invention to which the patentee is entitled the right to exclude. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115–16 (Fed. Cir. 2004).  Thus, the mere fact that the '178 patent specification discloses embodiments of the invention having a "conventional handle," and not one integrated into the sidewall or one that holds rinse water, does not operate to limit the claims to that specific configuration. *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306–07 (Fed. Cir. 2003).

Accordingly, we affirm the district court's construction of the phrases "handle located on the non flexible portion" and "handle joined to the non flexible portion."  They are each given their plain and ordinary meaning.

## B. Literal Infringement

On appeal, McGinley argues that the district court's order granting LNC's motion for summary judgment of noninfringement should be reversed, while LNC argues that it should be affirmed.  In its order granting summary judgment of noninfringement, the district court found that there was no material factual dispute that the alleged "generally flat" sidewall section of the Accused Device "does not differ[] in its shape as compared to the remainder of the continuous sidewall," and, thus, that "summary judgment is appropriate because the Accused Device does not contain each and every element of the claims." *McGinley*, 2019 WL 2150386, at *4.  As the "generally flat sidewall section"

limitation, when properly construed, does not require differentiation between the claimed sidewall section and the remainder of the continuous wall, the district court's holding was in error.

On the facts before us, it is unclear whether the Accused Device undisputedly infringes the asserted claims, when properly construed. Thus, we believe that the parties should be given the opportunity to present new evidence of infringement or noninfringement based on our fundamentally different construction of the term, "generally flat." Accordingly, the district court's grant of summary judgment of noninfringement is vacated and the issue is remanded for further consideration in view of our construction.

With respect to McGinley's request that the court reverse the district court's denial of summary judgment of literal infringement, and LNC's request that the court find that the district court erred in not finding that the Accused Device fails to disclose the "handle" limitations, the district court did not explicitly analyze whether the Accused Device satisfies the "handle" limitations, which is a question of fact, in its order granting summary judgment of noninfringement. We decline the opportunity to do so for the first time on appeal.

## II. Invalidity

LNC cross-appeals from the district court's judgment and order denying its motion for summary judgment of invalidity. The issue before the district court on that motion was whether the claims of the '178 patent were directed to subject matter—the "generally flat" limitations—not disclosed in McGinley's earlier applications and therefore not entitled to an effective filing date before October 22, 2008. According to LNC, if the claims of the '178 patent are not entitled to the benefit of an earlier filing date, then they are invalid, as violating the on-sale bar, as there is no dispute that McGinley began selling his "Shampoo Rinse Cup"

embodying those claims in July 2004. Cross-Appellants' Br. 9.

The "on-sale bar" rule is set forth in the portion of section 102(b) that provides that a person shall not be entitled to a patent if the invention was "on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b) (pre-AIA).[5] Whether the on-sale bar applies is a question of law based on underlying factual findings. *See Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016) (citing *Grp. One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045–46 (Fed. Cir. 2001)). We must determine whether, after resolving all reasonable factual inferences in favor of the patentee, the '178 patent is invalid as a matter of law. *See id.*

Before the district court, McGinley conceded that his Shampoo Rinse Cup embodies the invention of the '178 patent, and that the Shampoo Rinse Cup was first offered for sale and sold in the United States by July 2004. Thus, as the district court correctly noted, "the outcome of the parties' motions rest on the determination of the effective filing date for the asserted claims in the '178 patent." *McGinley*, 2019 WL 2150385, at *4. Determination of the priority date (*e.g.*, the effective filing date) is purely a question of law if the facts underlying that determination are, as they are here, undisputed. *See E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols., L.L.C.*, 525 F.3d 1353, 1359 (Fed. Cir. 2008).

The '178 patent was based on a continuation-in-part ("CIP") Application No. 12/255,797 ("the '797 Application"), filed on October 22, 2008. The '797 Application was a CIP

---

[5]    Because the application resulting in the '178 patent was filed before September 16, 2012, the effective date of the America Invents Act ("AIA"), the court refers to the pre-AIA version of § 102.

of Application No. 10/770,325 ("the '325 Application") filed on February 2, 2004. The '325 Application issued as United States Patent No. 7,441,675 ("the '675 patent") with all claims directed to a flexible panel pitcher or container with a divider. The '325 Application was a CIP of Application No. 10/357,651 filed on February 4, 2003 ("the Original Application"). In its order denying LNC's motion for summary judgment of invalidity, the district court found that claims 1 and 6 of the '178 patent are entitled to the February 4, 2003 filing date of the Original Application and held that claims 1 and 6 of the '178 patent are not invalid for failing to comply with the on-sale bar. Specifically, the district court found that the "generally flat" limitations are disclosed in the specification and drawings included in the Original Application.

According to LNC, the district court erroneously concluded that the claims were supported by the Original Application and the '325 Application. Cross-Appellant's Br. 55. LNC argues that, in reaching its conclusion, the district court made three mistakes: (1) it employed the wrong construction of "generally flat"; (2) it misconstrued the drawings and written description of the specification; and (3) it failed to give proper consideration to the estoppel effects of statements in the prosecution history. *Id.*

With respect to LNC's first two arguments, we find that the district court did not misconstrue the drawings and written description of the specification, and that, when properly construed, the "generally flat" limitations are disclosed in the specification and drawings included in the earlier applications. First, both the Original Application and the '325 Application clearly describe, contrary to LNC's assertions, sidewall portion (24)—a "generally flat" portion of sidewall. *See, e.g.*, J.A. 2908 ("Side wall rim 20, in a preferred embodiment is comprised of side wall portion 24, which is a generally flat portion of side wall rim 20."); J.A. 1234 (same); J.A. 2909 ("[I]n the vicinity of a generally flat side wall rim portion 24[] is flexible panel 28 . . ."); J.A.

1234 (same).  Second, both the Original Application and the '325 Application tout, as one of the benefits of having a "generally flat rim segment" comprising a "generally flat" portion of sidewall, allowing "the flexible portion of the container to mold to a shape against which it is pressed and to allow large volumes of fluid to be passed from the container onto the object."  J.A. 2912; J.A. 1236.  Finally, both the Original Application and the '325 Application included Figure 2 of the '178 patent, which McGinley stated during prosecution supported the addition of the "generally flat" claim limitations.  *See* J.A. 2185.  As noted in the specification of the '178 patent, Figure 2 is a top and interior perspective view of the embodiment of Figure 1 (also included in the earlier applications).  '178 Patent, col. 3, ll. 26–27; J.A. 2920; J.A. 1245.  Figure 1, in turn, clearly shows sidewall rim (20) and sidewall portion (24).  Sidewall portion (24) is "generally flat" according to the earlier applications, the '178 patent specification, and as construed by this court—it is mostly flat and is not, as a whole, V-shaped, round, or cylindrical.

With respect to its third argument on appeal, LNC relies on remarks that the patentee made in response to a double patenting rejection.  Cross-Appellant's Br. 70–71.  According to LNC, McGinley's admission that the invention claimed in the '178 patent relies at least in part on the new disclosure of Figure 9 added in the '797 Application is dispositive.  *Id.*  We agree with the district court, however, that "[i]t is clear from the rejection and the response that the patentee was not relying exclusively on Figures 2 and 9 to make his point."  *McGinley*, 2019 WL 2150385, at *7.  Instead, Figures 2 and 9 were examples showing that the "generally flat" limitations being added to the claims during prosecution had been previously disclosed, as detailed above, in the prior applications.

For the foregoing reasons, the district court's order denying LNC's motion for summary judgment of invalidity is affirmed.

### III. The District Court's Order Dismissing Count III and Awarding LNC Costs as the "Prevailing Party"

McGinley requests that we vacate the district court's Order dismissing Count III of the Amended Complaint, reinstate the claims as stated in Count III as no longer moot, and vacate the district court's Order awarding LNC costs as the "prevailing party" under Fed. R. Civ. P. 54(d)(1). Because the district court dismissed the claims of Count III as moot only after finding that the Accused Device does not infringe the asserted claims, *McGinley*, 2019 WL 3282926, at *3, and because we vacate the district court's finding of no infringement, we agree with McGinley that the claims of Count III should be reinstated on remand and that the district court's Order awarding LNC costs as the prevailing party be vacated.

Accordingly, we vacate the district court's Order dismissing Count III as moot and awarding costs.

### CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Accordingly, we reverse-in-part and affirm-in-part the district court's claim construction order, vacate the district court's order granting summary judgment of noninfringement, affirm the district court's order denying summary judgment of invalidity, vacate the district court's order dismissing Count III and awarding costs, and remand for further consideration.

**REVERSED-IN-PART, AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

### COSTS

The parties shall bear their own costs.